## Oldham *vs* Turner.

ERROR TO THE MADISON CIRCUIT.

*Usury. Sale of cash notes.*

Case 23.

JUDGE MARSHALL delivered the opinion of the Court.

*September* 26.

The case stated.

IN April, 1836, Turner loaned to W. & T. J. White $4,100, and took their note, with Oldham as surety, payable in one year, for the aggregate amount of the sum loaned, and twelve per cent. interest thereon. At the end of the year a second note was taken, in the same form, for the amount of the first note, and twelve per cent. thereon. When this second note fell due, Turner received in payment from the Whites, divers notes, payable to them respectively, giving them credit on the loan for the amount of the several notes received from them, after deducting therefrom, at the rate of twelve per cent. per annum, for the time they had to run till they respectively fell due. The net amount thus credited, was about equal to the original loan, and for the balance then due, including twelve per cent. interest thereon, the Whites and Oldham executed a third note, payable in twelve months, which was again renewed in the same way, by a note which fell due in April, 1840. On which last note a judgment was obtained against Oldham, who filed this bill against Turner, and injoined the judgment, claiming a deduction from the note sued on, and the judgment, not only on account of the usury included in each of the notes executed to Turner, and which composes the greater part of the note on which the judgment was obtained, but also on account of alledged usury in the assignment of the notes by the Whites to Turner. The relief prayed on this last ground having been refused, Oldham prosecutes a writ of error—and Turner, by cross errors assigned on the record, complains, that he has not been allowed by the decree as much as he is entitled to.

It is not contended on the part of Oldham, that upon the facts as above stated, he would be entitled to claim any

thing on account of the deduction of twelve per cent. made from the notes received by Turner from the Whites towards the payment of the loan, when the second note therefor fell due. But he alledges, and it is not denied, that with the assignment of each of the said notes transfered to Turner, was incorporated a covenant, signed by the assignor and Oldham, by which they covenanted, in case the notes should not be paid when due, to pay the amount one day afterwards, and to pay at the rate of twelve per cent. thereon for the time it should remain unpaid after becoming due. He alledges that this made the transaction usurious, and that it was a device to evade the statute, and prays to be allowed on the judgment injoined, so much of the amount deducted from said notes, as exceeds the rate of six per cent. per annum, for the time they had to run from the date of the assignment. Turner denies that the arrangement was a device to avoid the statute—and that the deduction made upon the assigned notes was usurious, but alledges that he allowed for the assigned notes their fair merchantable value, &c. &c.

It is well settled, that the purchase of a note on a third person, at a rate of discount exceeding six per cent. per annum, is not usurious. And the receipt of such notes in payment of a subsisting debt, stands on the same footing. The form, however, of taking notes by assignment, may doubtless be resorted to as a cover for usury, and when it is, the statute applies, as in any other case. Here, the single circumstance relied on as constituting or evidencing a usurious agreement in the assignment, is the covenant of the assignors, in effect warranting the prompt payment of the assigned notes. And in support of the position that this is usurious, we are referred to a passage in Pothier, on the contract of sale, (chap. IV.—578–p. 349,) in which the author says—"When the seller of a credit warrants that it shall be duly paid, it cannot, in that case, be lawfully purchased for a price less than the sum due. Such a price (he proceeds) ought not to be lawful any more than an usurious loan; for when I sell you, for 900 livers, a credit of 1000 livers, which I my-self engage to acquit if the debtor does not pay it, it is evidently the same thing as if you lend me 900 livers,

The purchase of notes at a discount of more than 6 per cent. is not usurious, and cash notes received in payment of money loaned at a discount greater than 6 per cent. is not usurious, though the assignor warrant the punctual payment thereof—but

on condition that I render you 1000 at the end of a cer-
tain time." It is to be observed that Pothier does not assert that the purchase of the guarantied credit for less than the sum due is usury, but that it ought not to be lawful any more than an usurious loan. And although the two cases put by him may be the same in effect, their results when the warranty is enforced, are not the same in several important features. For the undertaking of the borrower in the latter case, is direct and unconditional, and he must be resorted to for the money; while in the other cases, the undertaking of the vendor is wholly contingent, and he may never be liable for the money, or if he become liable, still another may be resorted to for it. Comparing the cases with a view to the question of usury, there is this further difference, that in the one case, there is certainly a loan and a sum secured for its forbearance; while the other is in form a sale, and cannot be denominated a loan, unless it be assumed that the sale is a mere pretext, and that the real intention of the parties is, that the pretended vendor, and not the credit or thing sold, shall be looked to for payment. If such were the intent of the transaction, it should doubtless be considered as a mere device to evade the statute. But unless the apparent vendor is to be regarded as the real debtor, from the first, we do not perceive how, if there be even an advance of money, the case can be brought within the condition of our statute, on the ground either of a loan or of the forbearance of a debt. And if instead of money being advanced in consideration of the credit or note assigned, the value allowed for the assigned note is applied as a credit and discharge of a pre-existing debt, there seems to be certainly no loan, and on the face of the transaction, the previous debt, instead of being forborne for a time, is extinguished, and the liability of a stranger substituted in its place. The contingent liability of the original debtor, dependent upon the failure of the third person to discharge his obligation, is not on its face a continuance of the original debt, but is rather in the nature of a collateral security for the substituted obligation, distinct from it and from the original debt.

If such transaction be not a sale in good faith, but to cover a loan, it may be usurious.

If the transaction is not in good faith  what it seems to be, the note or obligation of another, who is to be looked to for payment, but is really intended as a continuation of credit to the original debtor, under the pretext of an interposed assignment of a credit, warranted by him, these apparent distinctions would, of course, cease to be regarded, and the arrangements would be considered as a mere cloak for usury, and a device to avoid the statute. But if the assignment of the note be made and received in good faith, with the intent that the obligor shall be looked to for payment, then, although the vendor's warranty of prompt payment might be, in some sense, unlawful, as being to a certain extent either without consideration or founded on an usurious one, still we do not perceive that this illegality should necessarily operate upon any thing else but the warranty itself, and the right of the parties under it.   The mere assignment, if it stood alone, would give a perfect right to the assignee to receive and hold the full amount payable by the note, though he had given less than its value for the purchase.   Does the addition of the assignors covenant to pay immediately, if the maker of the note does not pay it when due, give him a right to demand from the assignee any part of the money which he may receive from the maker of the note, or any sum of money on account of the inadequacy of the price given for the assignment? The recovery upon the warranty, might, no doubt, be reduced by reference to the actual amount given for the assignment, with interest thereon.   But it does not follow, and perceiving no reason why it should follow, we do not admit that even if there be usury in the covenant or warranty, that fact gives any right in law or equity, except to limit the recovery upon the warranty or to reclaim what may have been paid upon it beyond the original consideration, with legal interest.

If the assignment were a mere pretext to give color to the exaction of the sum secured by the covenant, then as the covenant being the principal contract, would be usurious, the amount collected or collectable by virtue of the assignment, might be subject to reclamation or reduction, so far as it exceeded the true consideration given, with

legal interest thereon. But if the collection of the money under the assignment, were the principal object, and the covenant were intended merely as an ultimate security, then the assignment and the collection made under it, are free from all reclamation and deduction. We have already said that the transaction on its face, seems to be of this latter character. And as the complainant has made no specific charges tending to a different inference; and the defendant has denied the general allegation that the arrangement was a device to avoid the statute against usury, and made other statements and explanations in support of the validity of the assignment, we cannot determine that the arrangement was merely colorable, and intended as a device for the exaction of usury from the original debtors. If it had appeared that the discount upon the assigned notes was greater than usual, that circumstance, connected with the fact that the assignment and covenants annexed, were made in part discharge of a grossly usurious loan, might be entitled to weight in giving character to the transaction. But the latter fact alone does not, in our opinion, affect the rights of the parties or the character of the assignments.

Wherefore, there being no error in refusing the relief asked for, on account of the alledged usury in the discount of the notes assigned to Turner—and there being no other error to the prejudice of the complainant, the decree on his writ of error is affirmed, with costs and damages.

Upon the cross errors, it is objected that the decree has not allowed to the defendant as much as he is entitled to by compounding interest at the rate of six per cent. per annum at the several renewals of the loan. On calculating the sum due on the 2d of April, 1840, (when the note on which the judgment was obtained fell due,) according to the mode above stated, and which is established by the case of *Rodes* vs *Blythe,* (2 *Ben. Monroe,*) and fixing the commencement of the loan on the last day of April, 1836, and the reduction of its amount by the assigned notes, on the last day of April, 1838, we find that the note on which the judgment was obtained, contained $685 28, of usurious interest, instead of $700 04,

the sum perpetually injoined by the decree. But it may be inferred, on comparing the bill and answer, that usurious interest not included in the calculation just referred to, and perhaps equal to the difference between these two sums, was charged upon a note of one of the Whites, which went to make up the loan of $4,100. We think the decree should not be reversed on the objection made by Turner.

Wherefore, the decree is affirmed on the cross errors, also, with costs.

*Owsley & Goodloe* for plaintiff: *Turner* for defendant.